We have Ricardo Basquez for the appellant, and Scott Dionne for the government, and I may be mispronouncing your name, Mr. Basquez. That's correct, Your Honor. Okay, perfect. If you are ready, please proceed. I am. Thank you, Your Honor. Ricardo Basquez on behalf of the appellant Vadym Vozniuk. Just to update the record, I think Mr. Vozniuk has been released from custody and probably has been deported by now. So this is a fairly straightforward case. The only real issue is whether the spreadsheet on which the government relied to establish that Mr. Vozniuk was involved in the Grushko brothers' fraud was properly admitted into evidence over objection. And the defect in that chart is that it incorporated hearsay, testimonial hearsay, of unidentified, unnamed target employees who were directed by their employer to review that chart and identify who was in it. And so they did their job. They took their best guess. No one knows how they did that. It's not in the record. And then that chart was admitted into evidence over objection in violation of Palmer v. Hoffman, decided in 1943 in the Supreme Court and affirmed more recently by Melendez-Diaz, which held that a violation of Palmer v. Hoffman not only violates federal common law and later the rules of evidence, but also the Confrontation Clause of the United States Constitution. So the government's arguments for why this evidence should have been admitted are all arguments that were rejected in Melendez-Diaz. So there's nothing new in the government's brief. In fact, Palmer v. Hoffman, that even a record kept in the regular course of a business in Palmer, a railroad, if that record is made not for business decisions like how many widgets do we order or how many customers do we have, but for the business's litigation, that is not a business record within the meaning of federal common law or the federal rules of evidence. Let me ask you, do we apply plain error review to that issue? Your Honor, it couldn't be more plain, in fact. Okay. Well, if we apply plain error to that issue, you have to show that it's both plain and that it affected substantial rights. And the second element of that seems difficult on that issue. Well, as to the second element, Your Honor, the closing arguments of both sides, the prosecution and the defense, as well as all the motions made for judgment at the close of the government's case and judgment at the close of the defense case, at the close of all the evidence, all of those things focused on the issue of identity. It was, in fact, really the only issue litigated at trial, whether Mr. Wozniak could be identified. And what's most interesting about this record is what's not in the record. You would have expected if Mr. Wozniak could be clearly discerned from the video for the prosecution to do a big blowup of all these many transactions they say he was involved in and have those photographs, you know, like these paintings hanging here, on display in the trial. What about the fake IDs that had his photo? Well, the fake IDs were not found in Mr. Wozniak's house. They were found in the Gruszko brothers' house. So even if the Gruszko brothers made fake IDs for Mr. Wozniak, we don't know what they told him they were for or how they involved him. He could be an innocent dupe. You know, his English is very, very limited, and so we don't really know the circumstances. That's a lot of guesswork. The government's asking you to speculate and fill in all these gaps when really all they had to do was make a big blowup of any of those videos and say you can compare that photograph to the man sitting at that table, and they would have had a clean and fair trial. But they did have the video. They never showed the video. And the record's very clear that the government said, in closing, you should rely on the spreadsheet. The cases they're talking about where spreadsheets include other stuff don't involve a summary chart of business records. Diaz involved illustrative charts, and Richardson involved an expert witnesses' charts. Even though this court's opinion in Richardson refers to Rule 1006, that's not really how those come in. An expert's chart comes in under Rule 703, and an illustrative chart, which is not evidence, as Diaz makes explicitly clear, it says these charts are not evidence, and the jury must be instructed of that. Richardson as well. This court said the trial court must tell the jury that an expert's chart is the expert's opinion and not evidence, and that the jury has to rely on the evidence. That didn't happen in this case. Both those cases emphasized the cruciality of jury instructions. None of that happened here. All they had to do was bring a photograph to court. That's all they had to do. Thank you. Thank you. Mr. Dionne. Good morning, Your Honor. May it please the Court, Scott Dionne on behalf of the United States. This case illustrates the importance of the contemporaneous objection rule, which allows a party to preserve an issue for appeal only if he timely objects or moves to strikes, and states the specific ground for which he objects. Both challenges here on appeal, and specifically, since we're talking about the spreadsheet, the spreadsheet here on appeal is reviewed for plain error. I'd like to first begin by discussing whether this was, in fact, a plain error. And I think Mr. Bosniak's counsel referred to both Palmer v. Hoffman and Melendez-Diaz as plainly holding that a business spreadsheet, an investigative spreadsheet, is never admissible. And I don't think either case really stood for that proposition. If we were to agree with opposing counsel that the testimony of the target person and the spreadsheet were improperly admitted, can you talk to us about what other evidence was introduced that is still sufficient to sustain the conviction? Are we talking about whether, and I'm sorry to cut you off, are we talking about whether the testimony as a whole was inadmissible? For example, yes, if all of that was improper, is there still sufficient evidence without it, or do you need that testimony and that spreadsheet? Without all of the testimony, and without the spreadsheet, and without all of the business records, no, there's not sufficient evidence. Let me ask you a question about the witness. So one of the things I think we have to decide with respect to that is whether the failure to object to a witness not being sworn is waivable or whether that's reviewed for plain error. It seems to me, well, let me just, I'll just prompt you, and what do you say about that issue? About that issue, I think either way the government will prevail, and we would ask, just as in Watson, if this court doesn't want to decide the waiver issue, it can. Well, let's just assume that I want to decide the waiver issue. So I guess why would this be something? So there are some trial errors, for example, the jury composition, right? Once the jury is composed, you usually can't raise a Batson claim after the trial is over. That's not a plain error review. You don't apply to that. Is this more like that, or is it more just like an evidentiary issue where we do plain error review for hearsay issues and things like that all the time? This is more like the Batson issue, and I say that because the admission of the oath is really just an irregularity. That's how it's discussed in Odom, the Fourth Circuit case, and Babel, the Seventh Circuit case. In terms of the importance of the oath, there's other factors in the courtroom that impress upon the witness the importance of telling the truth. He's before a judge. He's sitting in front of a jury of his peers. There's three attorneys on the other side cross-examining him. And so to the extent that the oath was not given, we would, yes, say that that's a waivable error. Wouldn't that make it less like a Batson issue? I don't think we review Batson issues for plain error. I want to make sure I didn't misunderstand you. I think what Judge Brasher was saying was that would this be similar to that issue in terms of it being reviewed for waiver as opposed to plain error, and we would side on the waiver side because of the reasons I discussed. So what do you say about United States v. Lewis, which, I mean, the framework it sets up says if there's not sort of an intentional relinquishment, then the error is reviewed for plain error. Yeah, and the way that we discussed that in the briefs, and this wasn't fully briefed because it wasn't raised by Mr. Wozniak. The way we discussed that in the briefs and the footnote was that Lewis and Olano talk about constitutional rights being waived. And in our view, the oath is just an irregularity. Yeah, so you think, I mean, this is an interesting question, I think. So you think that, let's say, the state of Texahoma could prosecute someone based exclusively on unsworn testimony and then convict them, and the United States Supreme Court would not say that's a violation of the Constitution? Well, I'm not sure what the United States Supreme Court would say. I'm not sure that they've said it is our point. Yeah, so we're also a court, so we might be able to say something too, right? Exactly, Your Honor. But even if that's not a waivable error on the plain error side. So on the plain, so let's talk about that because that's an argument I don't understand, honestly. You argue on the plain error side. You say if plain error review applies, the way we would do that is by asking ourselves the question about whether we think this witness lied. How could we possibly conduct that sort of analysis? Well, the way that we discuss it is that there's no per se rule in the Rules of Evidence that says unsworn testimony is inadmissible. Yeah, yeah, there is. I mean, well, it just says you have to have sworn testimony. I mean, there's a specific rule that says there has to be an oath. Right, for testimony to be admissible. And putting that aside, even if we assume that that's not admissible, there's ways to lay foundation for business records without sworn testimony. So, for example, under 90211, you can have an unsworn certification by a custodian of record. So I guess there are two ways to look at this plain error issue, from what I can see from the briefs, on the testimony. One is you do it sort of like a normal plain error analysis, where you say, let's sort of forget about this testimony. For example, hearsay. Hearsay is admitted. The question on plain error review is, let's forget about the hearsay and let's see if there's sufficient evidence to convict the person, whether it affected their substantial rights, right? That's the question. The way I understood you to be suggesting in your brief is we don't do that. We instead do some kind of analysis where we ask, is there a reason to think this witness didn't tell the truth? Is there a reason to think that this is the kind of witness who might be impressed by the oath? And then if we don't get past that, then there's no plain error. Are you now suggesting maybe that the first way to do things would also be a basis to affirm? My suggestion would be yes, if this court would decide that the first way to do things, which we don't necessarily agree with, but if this court would decide the first way to do things is the right way, then there's still an avenue to allow the business records to remain on the record. And so if the business records are in, so explain to me that. So what is the evidence if the business records come in but sort of the underlying testimony of the security guard doesn't? Sure. So the business records are, there's about 200 videos of Mr. Wozniak going into Target, making the pickups and returns. There's receipts that document each transaction. And tying those things all together is really the spreadsheet that's found at the Gruszko's house on their computer, which is the McGasey spreadsheet on Government's Exhibit 37. That's a spreadsheet that was created by the Gruszkos, which documented the entire fraud from start to finish. And so there's entries, and just for example, entry number 215, row 215 on the McGasey spreadsheet, shows a pen book pick up made by Mark on February the 22nd. He picked up bedding and LED light bulbs. That's on the Gruszko's records. The Gruszkos accounted for that themselves. And then if you look at the pickup video for that day, you see somebody come in, somebody, it's Wozniak, but somebody comes in, uses an ID to pick up the merchandise, and there's a video showing him returning the merchandise later. Do we know that that's Wozniak without the Target-generated spreadsheets? Without the spreadsheets, the way that we know that's Wozniak is the fake IDs that were found. Well, first, the videos themselves. Were the videos played? Those were played for the jury. Not all of the videos, but there were some videos played for the jury. And I'll just give an example, DE 239, Docket Entry 239 on page 39. The video was played for the jury. Mr. Glitzos was asked to identify the subject, and he said it matches the description of subject number three. So that video was played for the jury, and to the extent that counsel for Mr. Wozniak also suggests that the videos weren't mentioned in closing, government's closing, they told the jury to go back and look at Government's Exhibit 1 when you're back in the deliberation room, and you will see dozens of photographs, dozens of videos capturing these three defendants in this fraud. Defense closing, defense also suggested that the jury look at the videos. They said, go back there, look at the video, and if you're convinced beyond a reasonable doubt that it was him in the store, well then, it was him in the store. But guess what, ladies and gentlemen? You're not going to be convinced, et cetera, et cetera. That's a direct quote. So the point you're making, and just to see if I understand, you're right. So the videos may not have been, some of these videos were played at trial, but all the videos were admitted into evidence. Correct. And so the jury had some method to play the videos if they wanted to look at them in the jury room? Yes, that's correct. The jury even asked, at one point they wrote a note saying, we can't access the exhibit with the spreadsheet, but also Government's Exhibit 1 not only had the spreadsheet, it also had all of the videos. Okay. I'm a little puzzled, given the evidence that you've described, why you've, it appears, conceded that if the unsworn testimony and the target spreadsheets were both excluded, that the evidence would be insufficient. Well, that's because the videos would also not be admitted. Well, so under, I took that question as meaning all of the evidence presented by Mr. Glitzos would not be admitted. And I'll circle back. I'll fix what I said. Under the theory that Glitzos' testimony is fully inadmissible, we still believe that the videos, the business records, the receipts, were admissible under the business records exception, and Glitzos laid foundation for them as an unsworn, essentially an unsworn certification under 90211. I see. So that evidence could come in even if his testimony didn't come in, is what you're saying. Yeah, and that happens regularly, just in the form of a certification, as opposed to live testimony. And so to the extent that reliability is a concern, he's in court in front of a judge laying foundation for the business records as opposed to certification made by some custodian of record that never appears before court. So he was also cross-examined, unlike a custodian of record would on a certification. And so I think that's more reliable, in fact, than an unsworn certification submitted by a custodian of record. So circling back to my question, if you lose his testimony and you lose his spreadsheet, you still have sufficient evidence to convict. Yes, but on the sufficiency question, and this was something that was raised in the reply, on the sufficiency question, it's a law of this court and the law of the Supreme Court that all of the evidence admitted to trial, whether admissible or inadmissible, is reviewed on a sufficiency review. So to the extent that Mr. Kozniak... Really? I mean, the law is that you can review inadmissible evidence to determine whether there was sufficient evidence to convict somebody? In United States v. Smith 459 F3rd 1276, it's on page 1286, footnote 10. Unfortunately, this was not cited in the briefs because this was raised on reply. In that footnote, they're discussing double jeopardy. And in that context, the question is whether all of the evidence admitted to trial, whether admissible or inadmissible, could sustain a verdict beyond a reasonable doubt. Did you try this case? Were you at the trial? No. Do you have a theory as to whether... One, I guess two questions. One is whether this witness actually was unsworn, and if so, why that would have happened? I don't have a theory. I think statutorily it's the court's obligation and either the court or the clerk's obligation, or the courtroom deputy to swear on the witness. And it looks like things were moving... From the record, it looks like things were moving fast and that obligation wasn't fulfilled. But all we have is the record. Right. So, I mean... If this was raised, and sorry to cut you off, if this was raised on a motion for a new trial, for example, there could have been more of an evidentiary record. There could have been witnesses like the lawyers to say, I don't remember him being sworn, or the court reporter could have... Let me posit this to you. So, I once litigated a death penalty case. It had been litigated for like 25 years when I got involved, and the litigation was entirely about the insertion of the word not in a jury instruction that the judge gave. Basically, it was like, you know, the defendant is not presumed innocent until proven guilty, right, is what the transcript said. And I filed a motion with the court because I found the tape recording of the instruction because it seemed unlikely to me that a judge actually said that. And I corrected the record after 25 years and won that case on the basis of that motion to correct the record. Any chance for a similar thing to happen here? Your Honor, I couldn't always contact the court reporter and ask to... Yeah, that might be a good idea. ...recording myself and clear things up for the court. And just on one last note, I see that I'm over my time. To the extent, again, that this is reviewed for plain error, this is also a discretionary call for the court, even if it was plain, even if it affected substantial rights. And we think this is just, unfortunately, an irregularity, something that was on the court to do, on the court and the deputy to do, not on the government or defense. And we think that on account of that small irregularity, we don't think that this should be retried. Thank you, Mr. Dionne. Mr. Basquez, you have reserved 10 minutes for rebuttal. Your Honor, I'm a little bit surprised  the United States of America, which is something that is sort of not in my nature to do all that much. But that motion was made, the record has been corrected, the witness was sworn. I was surprised that counsel wasn't aware of that since they must have made that motion. There is a new transcript. That's why I didn't argue that issue. That issue is withdrawn. I apologize. I thought the court was aware of that. I thought the U.S. Attorney's Office was aware of that. But there is a new transcript. So was that in the district court record? Yes, Your Honor. The CMECF sent it to everyone. That's how I found out about it. Can I just say thank you? I really do appreciate it. I trust that that actually is really hard to do, and I appreciate deeply your candor with the court. It actually is hard to do. It's easier when you're court appointed and you can't be fired. Let me ask you this question while we're being honest with each other. So your client has been let out of prison, and you say perhaps deported. Does that resolve the case? No, Your Honor. Unfortunately, there's well-established 11th Circuit law holding that immigration consequences don't moot the controversy. So in case Mr. Wozniak ever wants to go to Disney World, we have to do this appeal. So there was an objection at DE 240, page 5. The transcript reflects that the court agreed that any objection by any defense counsel would be for all defense counsels. The spreadsheet was objected to. The only issue before the court is whether the testimonial hearsay on which the jury clearly relied, and I'll explain why I think that in a minute, taints this conviction. So the business records are, of course, in evidence, and the business records, of course, have videos, and the jury had access to the videos. We know all of that. What we don't know is whether those videos are clear enough where you can tell a Gruszko from a Wozniak. That's the issue. So what we know is they didn't bring in one of those. And so the fact that they didn't bring in a big blow-up strongly suggests to me that those videos are not very good. And the fact that they had Glitzos testify about this spreadsheet, and all he was able to say is, it fits the description of Suspect 1, it fits the description of Suspect 2, tells me that those videos are not as clear as the government would like to believe. What about the fact that the jury was asking to see the videos? That suggests that the jury found them important. The jury asked to see the spreadsheet, and they were told, everything's on there. They said, can we see Exhibit 1? And the colloquy with the judge and the parties in response to that note reflects some confusion about what exactly they wanted, but it seems like what they really wanted was the spreadsheet. Because, I would surmise, from what's not in the evidence, a giant photograph, those videos are not clear. I think, probably, the way they find Mr. Wozniak, incidentally, is by tracing other records that connected him to the Grushkos. But we don't know if the Grushkos were trying to recruit him. Maybe he wasn't involved yet. Maybe they were hoping he'd help them with future frauds. It's all speculation. Sure, those ID cards are there, his picture's on them. That's a fact. But we don't know whether those particular ID cards were ever used.  What about the Grushkos' spreadsheet, keeping their own track of the fraud? Again, found in their house. Nothing in their house connects Mr. Wozniak to this fraud. And no evidence was found in Mr. Wozniak's house. So, the only fair inferences here are the Grushkos knew Mr. Wozniak and hoped to recruit him. Whether they successfully did recruit him or were still working on recruiting him, we don't know. But the fact that they have IDs with his photo and they haven't given them to him, right? They're in their house, the Grushkos brothers' house. That suggests to me that they were trying to get him to help them. And maybe he didn't really know what he was getting into. Maybe he didn't have the requisite mens rea to have committed this fraud. But the jury had the videos. The jury is capable of looking at the videos. And then you have all this other evidence with the fake IDs, with his... Why is that not enough? Your Honor, the question is whether the admission of evidence that plainly violates a rule that's been in effect since 1943 and reaffirmed in Melendez-Diaz affected the outcome of this trial. And I think it's inescapable from looking at the record as a whole that that testimony saying, my target employees, not FBI agents, not anybody trained to do this, by the way, target employees whose qualifications are unknown, so let's not assume these are like expert investigators, decided that Mr. Wozniak was in those videos. That's all we know. We don't know if the jury just said, well, I guess the target people must know what they're doing and threw their hands up and relied on that Melendez-Diaz barred testimonial hearsay. This conviction is utterly invalid. And I think that's what happened. That's the only issue before the court. Are we done? If you are. Thank you, Your Honors. It was lovely seeing you all. Thank you. Thank you both. We have your case under submission.